IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MICAH RUDISILL, # 48233-019                          PETITIONER

VS.                        CIVIL ACTION NO. 5:08-cv-272(DCB)(MTP)

M. MARTIN, Warden                                    RESPONDENT

MEMORANDUM OPINION AND ORDER

This cause is before the Court on remand from the Fifth Circuit Court of Appeals to determine whether the petitioner, Micah Rudisill ("Rudisill"), has satisfied the requirements for proceeding under the "savings clause" of 28 U.S.C. § 2255 as set forth in Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir. 2001), and in light of Garland v. Roy, 615 F.3d 391 (5th Cir. 2010).

Rudisill brought this action as a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his 1998 conviction and 1999 sentence in the District Court for the District of Arizona, which is located within the Ninth Circuit. Ordinarily, § 2241 is used to challenge the manner in which a sentence is executed, and is filed with the court where the prisoner is incarcerated; § 2255 is used to collaterally attack the legality of the petitioner's conviction or sentence, and is filed with the court where the prisoner was convicted and sentenced. See Warren v. Miles, 230 F.3d 688, 694 (5th Cir. 2000); Cox v. Warden, Fed. Det. Ctr., 911 F.2d 1111, 1113 (5th Cir. 1990). However, § 2241 may also be used by a federal prisoner to challenge the legality of his

conviction or sentence, but only if he can satisfy the mandates of § 2255's "savings clause." See Reyes-Requena, 243 F.3d at 901.

A prisoner may use § 2241 as the vehicle for attacking his conviction or sentence if it appears that the remedy by § 2255 motion "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255. A § 2241 petition is not a substitute for a motion to vacate sentence pursuant to § 2255, and the burden of coming forward with evidence to show the inadequacy or ineffectiveness of a motion under § 2255 rests squarely on the petitioner. Jeffers v. Chandler, 253 F.3d 827 (5th Cir. 2001). A prior unsuccessful § 2255 motion, or the inability to meet the AEDPA's "second or successive" requirement, does not make § 2255 inadequate or ineffective. Tolliver v. Dobre, 211 F.3d 876, 877 (5th Cir. 2000).

The Fifth Circuit has set forth three requisites a petitioner must show in order to meet his burden. To establish that a § 2255 motion is inadequate or ineffective, the petitioner must show that: (1) the petition raises a claim that is based on a retroactively applicable Supreme Court decision; (2) the claim was previously foreclosed by circuit law at the time when it should have been raised in the petitioner's trial, appeal or first motion for post-conviction relief; and (3) the retroactively applicable decision establishes that the petitioner may have been convicted of a nonexistent offense. Garland, 615 F.3d at 394; Reyes-Requena, 243

2

F.3d at 904.

Following a 17-week trial in 1999 in the District Court for the District of Arizona, Rudisill and five co-defendants were found guilty of conspiracy to commit fraud, conspiracy to commit money laundering, mail fraud, and wire fraud for their involvement in a fraudulent telemarketing scheme. Rudisill and one of his co-defendants were also found guilty of promotional money laundering. Rudisill was convicted of multiple counts of promotional money laundering and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h); multiple counts of conspiracy, in violation of 18 U.S.C. § 371; mail fraud, in violation of 18 U.S.C. § 1341; and wire fraud, in violation of 18 U.S.C. § 1343. The telemarketing scheme from which the convictions arose was a "fraudulent prize promotion scheme" in which Rudisill and others convinced customers to purchase overpriced promotional materials and advertising products as a condition to receiving "prizes" they had purportedly won. Customers were also told that they had won valuable "bonus points" which could be exchanged for certain merchandise (which was either never sent or was far less valuable than represented). After the initial payments, customers were deceived into paying more money into the scheme by being told that the payments were necessary to maintain eligibility, increase the size of the award, or avoid disqualification.

Rudisill was sentenced to a term of 210 months, to be followed

3

by three years of supervised release.  He was also ordered to pay restitution of approximately $8.7 million and a special assessment of $4,100.00.  United States v. Rudisill, 2005 WL 4867393 *1 (D. Ariz. Aug. 4, 2005); Petitioner's Brief, docket entry 23-1, p. 11. His sentence was comprised of the following: 210 months for the conspiracy to commit money laundering count and the money laundering counts, to be served concurrently; 60 months on each of the counts for conspiracy to commit mail and wire fraud and use of a fictitious name, mail fraud, and wire fraud, to be served concurrently, and to be served concurrently with the sentence previously imposed.  See Petitioner's Brief, p. 11; Respondent's Brief in Response, docket entry 31, p. 1.  In addition, the 210-month sentence was to be served consecutively to a 210-month sentence which had been imposed on Rudisill in the District Court for the Northern District of Alabama, United States v. Rudisill, No. CR 97-B-266-S.  See Petitioner's Brief, p. 11; Respondent's Brief, pp. 1-2.

Rudisill appealed his judgment of conviction and sentence from the District Court of Arizona to the Ninth Circuit Court of Appeals, which affirmed the District Court on July 12, 2002.  He then filed a motion to vacate, set aside or correct his sentence pursuant to § 2255 on grounds of (1) ineffective assistance of counsel, (2) failure to charge a cognizable offense; and (3) illegal sentencing under Blakely v. Washington, 542 U.S. 296

(2004).  The motion was denied on November 1, 2006.

Rudisill then filed his petition for writ of habeas corpus under § 2241 in this District Court, seeking to have his sentence reduced or vacated.  The respondent answered that this Court lacked jurisdiction to review the § 2241 petition as it was actually a § 2255 motion, and that the petitioner could not proceed pursuant to § 2255's savings clause.  The petitioner argued that he was actually innocent of the money laundering convictions, based on the Supreme Court's holding in United States v. Santos, 553 U.S. 507 (2008)(hereafter Santos).  However, this District Court found that the Supreme Court had not made Santos retroactive to cases on collateral review, nor had the Fifth Circuit Court of Appeals found it to be retroactive, citing, inter alia, United States v. Sims, 2009 WL 1158847, *3 (S.D. Tex. Apr. 29, 2009)(stating that "neither the Supreme Court nor the Fifth Circuit has 'made' the holding in Santos retroactive to cases on collateral review.").  In addition, the Court found that Santos was limited in application to cases of illegal gambling.  This finding was based, in part, on U.S. v. Brown, 553 F.3d 768, 783 (5th Cir. 2008)("The precedential value of Santos is unclear outside of the narrow factual setting of that case."); U.S. v. Howard, 309 F.Appx. 760, 771 (4th Cir. 2009)("Santos does not establish a binding precedent that the term 'proceeds' means 'profits,' except regarding an illegal gambling charge....");  and several district court cases.

When it issued its Order Adopting Report and Recommendation, this Court did not have the benefit of the Fifth Circuit's <u>Garland</u> opinion; therefore, the Fifth Circuit has instructed the Court to re-examine the "savings clause" analysis in light of <u>Garland</u>.

In his § 2241 petition, Rudisill argues that <u>Santos</u> modifies the definition of money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), holding that the term "proceeds" refers to "profits" and not "receipts." Rudisill argues that he was convicted of money laundering "based on payment of the expenses of the underlying criminal activity," which are not funds that qualify as "profits" under the money laundering statute, as interpreted by the Supreme Court in <u>Santos</u>.

Pursuant to the Fifth Circuit's instructions, the Court now revisits its analysis of the "savings clause" requirements. The first requirement is that the petition raises a claim that is based on a retroactively applicable Supreme Court decision. In <u>Garland</u>, the Fifth Circuit found that "new decisions interpreting federal statutes that substantively define criminal offenses automatically apply retroactively and <u>Santos</u> is an exemplar of such a decision." <u>Garland</u>, 615 F.3d at 396. This satisfies the first requisite under the savings clause.

Several courts have held that when a federal prisoner files a § 2241 petition under the savings clause of § 2255 in the district where he is incarcerated, the district court should apply the law

6

of the circuit where the petitioner was convicted and sentenced.
Notably, in <u>Hernandez v. Gilkey</u>, 242 F.Supp.2d 549 (S.D. Ill.
2001), a district court in the Seventh Circuit held that the law of
the circuit of conviction should apply to § 2241 proceedings held
in a different circuit. <u>Id</u>. at 554. Citing <u>In re Davenport</u>, 147
F.3d 605 (7th Cir. 1998), the court found that "[n]o law entitles
[a petitioner] to collateral review in a specific judicial circuit
other than the circuit of his conviction, and this is reflected in
<u>Davenport</u>'s requirement that any 'change in law' not merely be the
result of a circuit split." <u>Id</u>. The district court further found
that

> ... the <u>Davenport</u> rule is far from arbitrary. It
> actually has a very rational basis and treats similarly
> situated individuals the same. The rule ensures that the
> law that prevails in the judicial circuit of any federal
> prisoner's conviction, or a substantially similar law, is
> the law that will be applied to the prisoner's § 2241
> petition seeking a vacation of a conviction. Application
> of the law of the place of conviction is a consistent,
> reasonable rule, as is evidenced by the requirement that
> § 2255 motions be filed in the district of conviction.
> The rule [the petitioner] believes appropriate - applying
> the substantive law of the place of confinement - is
> actually far more arbitrary. Such a rule would base the
> choice of law decision on the fortuitous placement of a
> prisoner by the Bureau of Prisons, not the more rational
> factor of the place of conviction. It would result in
> similarly situated prisoners - perhaps even co-
> defendants, convicted of the exact same crimes - being
> treated differently because of their location of
> confinement. It would also raise the possibility of
> prisoner "forum shopping" by behavior modification. For
> example, a prisoner desiring to have Seventh Circuit law
> apply to him could misbehave in order to be sent to USP-
> Marion, a maximum security in Marion, Illinois.

<u>Id</u>. As a result, the district court in <u>Hernandez</u> applied Fifth

7

Circuit law (the petitioner had been convicted in the Eastern District of Louisiana), instead of Seventh Circuit law.  See also Chaney v. O'Brien, 2007 WL 1189641 *3 (W.D. Va. Apr. 23, 2007)("the substantive law relevant to a § 2241 petition is that of the circuit in which the petitioner was convicted"); Gordon v. Conley, 2000 WL 34240482 *3 (S.D. W.Va. June 30, 2000)("'change in law' is not to be equated to a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated").

Notwithstanding the logic of the argument favoring application of the law of the circuit of conviction, the Court finds that it must apply Fifth Circuit law (the law of the circuit of confinement).  First of all, this Court has been instructed by the Fifth Circuit to apply its Garland decision to this case, with no mention of any other circuit's law.  Furthermore, in Searcy v. Young, 489 Fed.Appx. 808, 810 (5th Cir. 2012), the Fifth Circuit rejected a § 2241 petitioner's argument based on Eleventh Circuit law, noting that "[the petitioner] cites no authority for the proposition that we must apply the law of the circuit in which the conviction occurred to the § 2241 question."  In addition, although it is not dispositive of the issue, the Court notes that in Owens v. Sanders, 2012 WL 6213790 (C.D. Cal. Nov. 7, 2012), the district court hearing Owens's § 2241 petition held that in interpreting Santos it was bound by the law of the Ninth Circuit (the circuit of

8

confinement), not the Sixth Circuit (the circuit of conviction).

The Court also considers whether, in lieu of applying Ninth Circuit law, it may transfer Rudisill's § 2241 petition to the district court for the District of Arizona (where he was convicted and sentenced). Several courts have addressed the propriety of transfer from the court of confinement to the court of conviction by way of the All Writs Act, <u>e.g.</u> writ of corum nobis or writ of audita querela. For example, in <u>In re Nwanze</u>, 242 F.3d 521 (3rd Cir. 2001), the Third Circuit allowed a transfer to the district where the petitioner was sentenced, reasoning that the district court of sentencing (located in the Fourth Circuit) could entertain the claims by way of a petition for writ of error coram nobis. <u>Id</u>. at 526.

Both the Fifth and the Ninth Circuits, however, have rejected the use of extraordinary writs as a substitute for habeas corpus. <u>See</u> <u>United States v. Whitehead</u>, 449 Fed.Appx. 326, 326-27 (5th Cir. 2011)(writ of audita querela not available if objection can be brought pursuant to any other post-conviction remedy)(citing <u>United States v. Miller</u>, 599 F.3d 484, 488 (5th Cir. 2010)); <u>United States v. Esogbue</u>, 357 F.3d 532, 534 (5th Cir. 2004)("'the writ of coram nobis is an extraordinary remedy available [only] to a petitioner no longer in custody'")(quoting <u>Jimenez v. Trominski</u>, 91 F.3d 767, 768 (5th Cir. 1996); and citing <u>United States v. Peter</u>, 310 F.3d 709, 712 (11th Cir. 2002)); <u>Matus-Leva v. United States</u>, 287 F.3d

9

758, 760-61 (9th Cir. 2002)(federal prisoner cannot challenge conviction via writ of corum nobis if claims could be raised in federal habeas petition); United States v. Valdez-Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001)(common law writs such as audita querela and coram nobis survive "only to the extent they fill 'gaps' in the current systems of postconviction relief").

More recently, several courts have discussed the propriety of transfer under 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In Lilly v. Rios, 2011 WL 2433643 (E.D. Cal. June 14, 2011), the district court for the Eastern District of California addressed a petitioner's § 2241 claim that his conviction was invalid, by way of § 2255's "savings clause."  The petitioner filed a motion to transfer his petition to the sentencing court, the Eastern District of North Carolina.  The district court found that

> [s]ound reasons exist for transferring the 2241 petition
> to the district of conviction and sentencing.  The record
> is there, and most probably necessary witnesses, if any,
> are too.  Additionally, that court may have greater
> flexibility in shaping any new sentence.  In re Nwanze,
> 242 F.3d 521, 527 (3rd Cir. 2001); see also United States
> v. Mata, 133 F.3d 200, 201-02 (2nd Cir. 1998).  Further,
> the sentencing court would also have "superior
> familiarity with the underlying conviction and sentence,"
> Short v. Schultz, No. 08-186, 2008 U.S. Dist. LEXIS 6321,
> 2008 WL 305594, at *3 (D. N.J. Jan. 28, 2008), and would
> "know what its intentions would have been if it had been
> sentencing on the remaining counts without imposing a
> sentence' on the vacated counts.  In re Nwanze, 242 F.3d

10

at 527.

Id. at *1.  However, the district court also noted that § 1404(a) "authorizes transfer only to a district where the petition 'might have been brought,' and a section 2241 petitioner challenging his present physical custody is limited to filing the petition 'in the district of confinement.'"  Id. at *2 (citing Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004)).

The "territorial-jurisdictional rule" requires that a § 2241 petition be filed in the district of confinement.  However, in a concurring opinion in Padilla, Justice Kennedy, joined by Justice O'Connor, stated the view that "the proper location of a habeas petition is best understood as a question of personal jurisdiction or venue."  Id. at 451.  Justice Kennedy also cited Moore v. Olson, 368 F.3d 757(7th Cir. 2004), in which the Seventh Circuit likened the immediate-custodian rule to a personal-jurisdiction rule and the territorial-jurisdiction rule to a venue rule.  Padilla, 524 U.S. at 452 (citing Moore, 368 F.3d at 759-60).  Justice Kennedy therefore reasoned that, as a venue rule, the territorial-jurisdictional rule could be waived by the government.  Id. at 452.

The district court in Lilly, relying on Justice Kennedy's concurrence in Padilla, therefore found that the "Respondent's failure to object to Petitioner's request to transfer the matter shall be considered a waiver of the territorial-jurisdiction rule."

Other courts, including this Court, have ruled that the

11

government can waive the immediate-custodian and territorial-jurisdiction rules. See, e.g., Gooden v. Gonzales, 162 Fed.Appx. 28, 29 (2nd Cir. 2005)("the government does not contend in this appeal that the Attorney General is an improper respondent, or that the Eastern District of New York is an improper venue for this suit, and as such, those arguments have been waived"); Ulloa v. Ledezma, 2009 WL 2351710, *4 n.3 (W.D. Okla. July 28, 2009)(considering a government motion to transfer to the district of sentencing as a waiver of personal-jurisdiction or territorial-jurisdiction objections).

In Gipson v. Longley, Civil Action No. 5:12-cv-62(DCB)(JMR), this Court adopted a Report and Recommendation of Chief Magistrate Judge John M. Roper, and granted the respondent's motion to change venue from the Southern District of Mississippi (the district of confinement) to the Northern District of Mississippi (where Gipson was convicted and sentenced). The Court found that the respondent's request amounted to a waiver of the territorial-jurisdictional rule. Report and Recommendation, 2012 WL 6860197, *1 (S.D. Miss. Nov. 13, 2012); adopted by Order of Jan. 9, 2013 (docket entry 15 in 5:12-cv-62).

In the present case, however, there is no basis for finding a waiver of personal jurisdiction or venue, inasmuch as neither the petitioner nor the respondent has moved for a change of venue.

The Court therefore proceeds to the second requirement under

the "savings clause," which is that the petitioner's claim was previously foreclosed by circuit law at the time when it should have been raised in the petitioner's trial, appeal or first motion for post-conviction relief.  In its prior Order, the Court found that Rudisill had not been foreclosed from raising a "<u>Santos</u>" claim, citing <u>Wilson v. Roy</u>, 2009 WL 1203401 (E.D. Tex. May 1, 2009).  In that case, the district court found that "the Fifth Circuit has not - before or after <u>Santos</u> - addressed the gross-versus-net-income debate over the correct definition of the term "proceeds.'"  <u>Id</u>. at *6.  Therefore, the Court concluded, the petitioner was not foreclosed from raising the argument at trial, on appeal, or in his first § 2255 motion, and he could not proceed with his § 2241 petition under the savings clause of § 2255.

In <u>Garland</u>, however, the Fifth Circuit noted that "foreclosed" means "'excluded' by prior controlling case law," 615 F.3d at 397, and further explained:

> We have consistently held that if an argument falls within the scope of, and is excluded by, a prior holding of a controlling case, it is foreclosed by that case. The court need not have specifically considered and rejected the exact claim for it to be foreclosed, as long as the breadth of a prior holding was meant to encompass and preclude the argument.

<u>Id</u>. at 398.  The Fifth Circuit found that Garland's claim had been previously foreclosed by Fifth Circuit case law.  <u>Id</u>.  Garland had been convicted and sentenced in the Northern District of Texas (<u>see</u> <u>United States v. Garland</u>, 44 Fed.Appx. 651 (5th Cir. 2002)), and

13

filed his § 2241 petition in the Eastern District of Texas (where he was incarcerated)(see <u>Garland v. Roy</u>, 615 F.3d at 392).   Thus, the "prior controlling case law" was that of the Fifth Circuit.

In this case, the Court is deciding Rudisill's claim in his § 2241 petition under Fifth Circuit law.   However, in deciding whether Rudisill's claim was previously foreclosed at the time when it should have been raised in his trial, on appeal, or in his first § 2255 motion, the "prior controlling case law" is that of the Ninth Circuit, where Rudisill was convicted.   <u>See</u> <u>Bell v. Keffer</u>, 2011 WL 825731 *3 (N.D. Tex. March 3, 2011)(in deciding whether a claim was previously foreclosed by circuit law, "the circuit law with which the court is concerned is the law of the ... [c]ircuit where petitioner was tried, her appeal was taken, and her first § 2255 motion was filed.").

At the time of Rudisill's conviction, settled law in the Ninth Circuit established the legality of his conviction.   In addition, <u>Santos</u> was decided after the petitioner's direct appeal and first § 2255 motion were denied.   Therefore, Rudisill's claim was previously foreclosed by circuit law at the time when it ordinarily would have been raised in his trial, appeal and first motion for post-conviction relief, satisfying the second requisite.

The third requirement under the "savings clause" is that the retroactively applicable decision establishes that the petitioner may have been convicted of a nonexistent offense.   In his brief in

14

support of his petition, Rudisill argues that Santos retroactively decriminalizes the conduct for which he was convicted under the money laundering statute (specifically 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h)).   According to the petitioner, his conviction was based on financial transactions which constituted payment of the expenses of the underlying illegal activities, whereas, under Santos, "a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid." Petitioner's Memorandum Brief, p. 10, quoting Santos, 553 U.S. at 517.

In Santos, the Supreme Court interpreted the meaning of "proceeds" under the money laundering statute then in effect, 18 U.S.C. § 1956(a)(1), specifically 18 U.S.C. § 1956(a)(1)(A)(i) (promotional money laundering). Santos, 553 U.S. at 511.   The statute provided:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity - (A)(I) with the intent to promote the carrying on of specified unlawful activity; ... will be [penalized].

18 U.S.C. § 1956(a)(1)(A)(i).   The question before the Court was whether the term "proceeds" in the statute meant the "profits" of the specified unlawful activity, or the "receipts" of such activity. Santos, 533 U.S. at 509.

15

Efrain Santos operated an illegal lottery using runners, who gathered the bets and retained a percentage thereof as commissions, and collectors, who delivered the money to Santos. Santos v. U.S., 461 F.3d 886, 888 (7th Cir. 2006)(hereafter Santos v. U.S.). One collector in Santos's employ was Benedicto Diaz. Id. A 10-count indictment was filed against Santos, Diaz, and others in the Northern District of Indiana, based on, inter alia, payments to runners, collectors, and winners. Id. Santos was charged with conspiracy to conduct an illegal gambling business (count 1); conducting an illegal gambling business (count 2); conspiracy to use the proceeds of an illegal lottery business to promote the carrying on of the business, i.e., a conspiracy to launder money (count 3); money laundering by completing a financial transaction with the proceeds of the illegal gambling business with the intent to promote the carrying on of the business (count 4); and similar money laundering charges (counts 5 to 10). Id.

At trial, a jury found Santos guilty of counts 1-5, and not guilty of counts 6-10. Id. The district court sentenced him to 60 months of imprisonment on both of the illegal gambling counts (counts 1 and 2) and 210 months on each of the money laundering counts (counts 3-5), all to run concurrently. Id. Diaz pled guilty to count 3 (conspiracy to launder money), and the other counts against him were dismissed. The district court sentenced him to 108 months of imprisonment. Id.

16

On April 23, 1998, Santos, Diaz and three other co-defendants appealed their convictions and sentences to the Seventh Circuit Court of Appeals.  Santos presented only one issue for review, arguing that the evidence was insufficient to convict him of money laundering because the cash payments to the collectors and winners were essential transactions of the illegal gambling business, and therefore the payments could not also constitute transactions under the money laundering statute, § 1956(a)(1)(A)(i).  The Seventh Circuit affirmed Santos's conviction and sentence, and the Supreme Court denied a writ of certiorari.  Id.

Santos and Diaz then filed writs of habeas corpus pursuant to § 2255 challenging their convictions and sentences.  Santos, 533 U.S. at 510.  The district court for the Northern District of Indiana dismissed all of Santos's § 2255 claims, except his challenge to the money-laundering convictions.  Id.  Relying on Seventh Circuit precedent, the district court held that the federal money-laundering statute's prohibition of transactions involving criminal "proceeds" applied only to transactions involving criminal profits, not criminal receipts.  Id. (citing United States v. Scialabba, 282 F.3d 475 (7th Cir. 2002)).  The district court then applied Scialabba to Santos's case, and "found no evidence that the transactions on which the money-laundering convictions were based (Santos's payments to runners, winners and collectors and Diaz's receipt of payment for his collection services) involved profits,

17

as opposed to receipts, of the illegal lottery ...." <u>Id</u>. The district court vacated the money-laundering convictions, and the Seventh Circuit affirmed. The Government then appealed to the Supreme Court.

Writing for the plurality in a fractured 4-1-4 decision, Justice Scalia noted that the term "proceeds" in the money-laundering statute was undefined, and that the ordinary meaning of "proceeds" "can mean either 'profits' or 'receipts.'" <u>Id</u>. at 511. Applying the rule of lenity, he then concluded that "proceeds" meant "profits," and not "receipts" under the money-laundering statute. <u>Id</u>. at 514. He reasoned that "[b]ecause the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted." <u>Id</u>.

In addition, Justice Scalia reasoned that interpreting "proceeds" as "receipts" in Santos's case would create the "perverse result" of a "merger problem." Id. at 515. He described the "merger problem" as follows:

> If "proceeds" meant "receipts," nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery. Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would "merge" with the money-laundering statute. Congress evidently decided that lottery operators ordinarily deserve up to 5 years of imprisonment, § 1955(a), but as a result of merger they would face an additional 20 years, § 1956(a)(1).

18

> Prosecutors, of course, would acquire the discretion to
> charge the lesser lottery offense, the greater money-
> laundering offense, or both - which would predictably be
> used to induce a plea bargain to the lesser charge.

Id. at 515-16.  See also Black's Law Dictionary, 1078 (9th ed.
2009)(defining merger in the criminal context as "[t]he absorption
of a lesser included offense into a more serious offense when a
person is charged with both crimes, so that the person is not
subject to double jeopardy")(quoted in United States v. Lineberry,
702 F.3d 210, 214 (5th Cir. 2012)(emphasis added by circuit court)).

Justice Scalia then explained how interpreting "proceeds" to
mean "profits" under the money-laundering statute would avoid the
merger problem:

> The Government suggests no explanation for why Congress
> would have wanted a transaction that is a normal part of
> a crime it had duly considered and appropriately
> published elsewhere in the Criminal Code to radically
> increase the sentence for that crime.  Interpreting
> "proceeds" to mean "profits" eliminates the merger
> problem.  Transactions that normally occur during the
> course of running a lottery are not identifiable uses of
> profits and thus do not violate the money-laundering
> statute.  More generally, a criminal who enters into a
> transaction paying the expenses of his illegal activity
> cannot possibly violate the money-laundering statute,
> because by definition profits consist of what remains
> after expenses are paid.  Defraying an activity's costs
> with its receipts simply will not be covered.

Id. at 517.  Thus, according to Justice Scalia, neither type of
transaction underlying the money-laundering charges against Santos
could be characterized as the lottery's profits: the charges were
based on Santos's payments to lottery winners and to employees.
Id. at 524.  Thus, Justice Scalia's plurality opinion affirmed the

Seventh Circuit's vacatur of Santos's money-laundering convictions. Id.

Justice Stevens concurred in the judgment, providing the fifth vote to vacate the money-laundering convictions. Id. at 524-29 (Stevens, J., concurring). He agreed that the rule of lenity dictated that "proceeds" means "profits," and not "receipts," where the specified unlawful activity of illegal gambling creates the "perverse result" of the merger problem under the money-laundering statute. Id. at 528. He also noted:

> Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.

Id. at 527. Justice Stevens also noted that the Guidelines provide for different ranges of punishment if the defendant is found guilty of two crimes. Id. at 527 n.6. However, he clearly expressed his view that the definition of "proceeds" could vary depending on the specified unlawful activity forming the predicate for the money-laundering charges. Id. at 526. Thus, Justice Stevens disagreed with Justice Scalia to the extent that, in Justice Stevens' view, "proceeds" does not necessarily connote a meaning of "profits" under the statute. Id.

Justice Stevens agreed with Justice Alito's dissent that the legislative history indicates that "proceeds" means gross receipts

"from the sale of contraband and the operation of organized crime syndicates involving such sales." Id. at 525-26. Justice Stevens did not agree with the plurality that the Court should apply the rule of lenity to those types of unlawful activities. Id. & n.3. However, he reasoned that this legislative history was not instructive in determining the meaning of "proceeds" for other specified unlawful activities under the statute. Id. at 525-26. Therefore, he advocated a case-by-case approach for ascertaining whether a specified unlawful activity warrants the "profits" or the "receipts" definition of "proceeds." Id. at 525 ("this Court need not pick a single definition of 'proceeds' applicable to every unlawful activity, no matter how incongruous some applications may be"). Justice Stephens stated:

> [M]y conclusion rests on my conviction that Congress could not have intended the perverse result that the dissent's rule [always defining proceeds as "gross receipts"] would produce if its definition of "proceeds" were applied to the operation of an unlicensed gambling business.   In other applications of the statute not involving such a perverse result, I would presume that the legislative history summarized by Justice Alito reflects the intent of the enacting Congress .... Its decision to leave the term undefined is consistent with my view that "proceeds" need not be given the same definition when applied to each of the numerous specified unlawful activities that produce unclean money.

Id. at 528 n.7 (citations omitted).   Justice Scalia acknowledged that Justice Stevens' concurrence on the narrowest grounds limits the Court's holding accordingly.   Id. at 523.

On August 13, 2010, the Fifth Circuit decided Garland,

21

interpreting <u>Santos</u> in the context of a § 2241 petition by way of § 2255's "savings clause" provision, and expressly holding that the Supreme Court's <u>Santos</u> decision applies retroactively.   <u>Garland</u>, 615 F.3d at 396-99.   Recognizing Justice Stevens' concurrence as controlling, the Fifth Circuit interpreted his concurrence as creating a bifurcated analysis.   <u>Id</u>. at 399, 402-03.

The first part of Justice Stevens' concurrence held that the rule of lenity requires a finding that "proceeds" means "profits" in cases where defining proceeds as "gross receipts" would result in a "merger problem."   <u>Id</u>. at 402.   The Fifth Circuit noted in <u>Garland</u> that a merger occurs "when a defendant could be punished for the same 'transaction' under the money-laundering statute as well as under the statute criminalizing the 'specified unlawful activity' underlying the money-laundering charge."   <u>Id</u>.   A "merger problem" would therefore exist "if 'proceeds' were to be defined as 'receipts' rather than 'profits,'" and the money-laundering charge could be based on the same "transaction" as the "predicate crime." <u>Id</u>. at 400.

The second part of Justice Stevens' concurrence held that, in cases where there is no "merger problem," there should be a presumption that "proceeds" should be defined as "gross receipts," but that this presumption could be rebutted by the legislative history of the money-laundering statute.   <u>Id</u>. at 402.

In <u>Garland</u>, the defendant was convicted of 52 counts of money-

22

laundering which were predicated upon 62 counts of mail fraud and one count of securities fraud. Id. at 394. In applying Santos, the Fifth Circuit found that:

> in light of the statute, indictment, and jury instructions of this case, it appears that (1) the Government did not prove or attempt to show that Garland engaged in money laundering with "proceeds," narrowly defined as "profits" rather than as "gross receipts"; (2) the same "transaction" may have been used to prove both the underlying unlawful activity and the money-laundering charges; and therefore (3) Garland's convictions for mail and securities fraud potentially "merged" with his money-laundering conviction.

Id. at 404.

The Fifth Circuit thus concluded that Garland may have been convicted of a "non-existent offense." Id. Garland therefore satisfied the third prong of the Fifth Circuit's test for assessing whether a petitioner may proceed under § 2241 by way of § 2255's savings clause. Id. Having determined that Garland satisfied all three of the Reyes-Requena requisites, the Fifth Circuit reversed the district court's dismissal of Garland's § 2241 petition and remanded for further proceedings. Id.

The Court notes that Congress amended the money laundering statutes in 2009 to define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. §§ 1956(c)(9), 1957(f)(2)-(3) (2009). The amendments effectively overruled Santos, but "[t]he ex post facto clause prohibits legislatures from retroactively altering the

23

definition of a crime or increasing the punishment for it." <u>United States v. Sahabir</u>, 880 F.Supp.2d 377, 380 n.2 (N.D. N.Y. 2012)(citing <u>Collins v. Young</u>, 497 U.S. 37, 43 (1990)).   Thus, Rudisill's challenge to his sentence based on <u>Santos</u> is not governed by the amendments to the money laundering statute since the acts for which Rudisill was convicted and sentenced occurred before the amendments were enacted.   See <u>id</u>.

The Court also notes that in 2002 Congress increased the maximum sentence for mail and wire fraud from five years to twenty years (Sarbanes-Oxley Act of 2002), but this too has no effect on Rudisill's sentence.

In this case, Rudisill relies on <u>Santos</u> to claim that the term "proceeds" in his case was wrongfully applied because the trial evidence showed that his payments were "gross receipts," not "profits."   Specifically, he argues that he "has been convicted of a nonexistent offense because his convictions for money laundering 'merged' with the scheme to defraud and his fraud convictions, and the Government did not prove or attempt to show that Rudisill engaged in money laundering with 'proceeds,' narrowly defined as 'profits' rather than 'gross receipts.'"   Petitioner's Supplemental Memorandum Brief, p. 16 (docket entry 23-1).   Rudisill further argues:

> The money laundering convictions for counts 38 and 47-57 in the underlying criminal case (CR97-237-6-PHX-ROS) merged with the scheme to defraud at the heart of Mr. Rudisill's convictions for counts 1, 2, 5, 8-20, and 21-

24

33, in that a review of the record establishes that the money laundering convictions were based on transactions paying expenses central to the scheme to defraud, with the gross receipts of the same.  This showing is sufficient to establish that the "merger problem" which Justice Stevens characterized as a "perverse result" – triggering the requirement that the Government prove that the "proceeds" were "profits" - is present in Mr. Rudisill's case.

Id. at p. 20.  Furthermore, the petitioner asserts that the

... indictment and jury instructions ... establish that the Government neither proved nor attempted to show that the "proceeds" involved in the money laundering transactions were "profits" of the underlying scheme to defraud.  To the contrary, in describing the method and means of the money laundering conspiracy, the court instructed the jury that "[c]hecks were written against those accounts and used to pay the expenses of carrying out the business of AEA." ... The substantive counts incorporate this method and means paragraph of the conspiracy count and describe necessary expenses of the scheme. ... Since the offenses merged and the Government did not prove or attempt to show that the "proceeds" involved in the money laundering transactions were "profits," Mr. Rudisill was convicted of a nonexistent offense, satisfying the third Reyes-Requena factor.

Id. at p. 30-31 (citations omitted).

A petitioner such as Rudisill, seeking to avail himself of the "savings clause" exception of § 2255, "bears the burden of presenting a credible claim of actual innocence."  Spearman v. Wilson, 469 Fed.Appx. 435, 437 (6th Cir. 2012).  A claim of actual innocence (i.e. "factual innocence") for purposes of the "savings clause" is tested by the standard articulated by the United States Supreme Court in Bousley v. United States, 523 U.S. 614 (1998): "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no

25

reasonable juror would have convicted him." Id. at 623.   The
petitioner bears the burden of proof on this issue by a
preponderance of the evidence.   Furthermore, he must show the
evidence against him was so weak that "no reasonable juror" would
have convicted him. Lorentsen v. Hood, 223 F.3d 950, 953 (9th Cir.
2000).

The First Superseding Indictment in Rudisill's case charges
that Rudisill and his co-defendants, "knowing that the property
involved in financial transactions represented the proceeds of some
form of unlawful activity, knowingly conducted financial
transactions ... which involved the proceeds of specified unlawful
activity, namely mail and wire fraud in violation of Title 18,
United States Code, Sections 1341 and 1343, with the intent to
promote the carrying on of those specific unlawful activities."
Superseding Indictment, pp. 15-16.   Counts 47 through 57 include
the following transactions, "[i]n violation of Title 18, United
States Code, Sections 1956(a)(1)(A)(i)" (Id. at p. 17):

Count 47: check dated September 30, 1996, in the amount of
$1,790.00, payable to Francis Family Trust for rent.

Count 48: check dated October 9, 1996, in the amount of
$18,065.00, payable to Arizona Gold Exchange for gold coins.

Count 49: check dated October 21, 1996, in the amount of
$13,939.25, payable to Arizona Gold Exchange for gold coins.

Count 50: check dated October 29, 1996, in the amount of

26

$3,580.00, payable to Gotham Marketing for customer leads.

Count 51: check dated December 12, 1996, in the amount of $20,044.60, payable to Arizona Gold Exchange for gold coins.

Count 52: check dated September 1, 1996, in the amount of $3,667.00, payable to Lewis & Hall for rent.

Count 53: check dated September 3, 1996, in the amount of $7,014.00, payable to Society of Stewards.

Count 54: check dated October 9, 1996, in the amount of $6,261.00, payable to Society of Stewards.

Count 55: check dated January 31, 1997, in the amount of $24,950.00, payable to Now, Inc. for payroll.

Count 56: check dated January 23, 1997, in the amount of $25,000.00, payable to Now, Inc. for payroll.

Count 57: check dated April 3, 1997, in the amount of $15,775.00, payable to Now, Inc. for payroll.

Id. at pp. 16-17.

Section 1956(a)(1)(A)(i)(promotional money laundering) provides that a person is guilty of money laundering if he or she

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
>
> (A)
>
> (i) with the intent to promote the carrying on of specified unlawful activity; ...

18 U.S.C. § 1956(a)(1)(A)(i).

27

In addition, section 1956(h) provides that "[a]ny person who conspires to commit any offense defined in this section ... shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1956(h).

In response to Rudisill's claim of actual innocence, the respondent states: "Based on the Fifth Circuit's interpretation that <u>Santos</u> applies to this proceeding, Respondent concedes that the court should vacate the money laundering convictions and the conviction for conspiracy to commit money laundering." Respondent's Response to the Petitioner's Brief, p. 2 (docket entry 31)(citing <u>Garland v. Roy</u>, 615 F.3d 391 (5th Cir. 2010))(footnote omitted).

This concession does not end the Court's inquiry, however. "[A] concession by the government as to a legal conclusion is not binding" on the Court. <u>United States v. Miller</u>, 822 F.2d 828, 832 (9th Cir. 1987). The issue before the Court is whether the facts of Rudisill's criminal case would support a conviction under <u>Santos</u>. The statement by the respondent is not a stipulation of fact; it is a conclusion of law, and cannot bind this Court. <u>See</u> <u>McCaskill v. SCI Management Corp.</u>, 298 F.3d 677, 681-83 (7th Cir. 2002). <u>See also</u> <u>Roberts v. Galen of Va., Inc.</u>, 525 U.S. 249, 253 (1999)(concession by respondent is not dispositive of a legal issue); <u>United States v. Lee</u>, 586 F.3d 859, 866 (11th Cir.

28

2009)(noting that a court is not required to accept the concession of the government as a party).  This Court must therefore satisfy itself that vacatur is warranted.

It appears that Rudisill can satisfy the actual innocence prong as to Counts 47-52 and 55-57.  These counts involve payments for rent, gold coins, customer leads, and payroll.  Such payments are ordinary business expenses of the fraudulent scheme and do not represent profits.  However, Counts 53 and 54, representing donations to a charity, are more problematic.  It seems questionable that such donations would be ordinary business expenses.  They may, instead, be payments out of profits which in turn promoted the fraud scheme.  If that is the case, Rudisill would not be able to satisfy the actual innocence prong as to these two counts, nor to the conspiracy to commit money laundering count, since the principal applicable to the substantive counts applies to the conspiracy count as well.

This issue turns on the facts as developed in the trial court.  Based on the scant factual record before this Court, the Court cannot make a meaningful determination of the issue.

The respondent has already waived any personal-jurisdiction or territorial-jurisdiction objections to the transfer of this case for re-sentencing purposes.  Respondent's Response to the Petitioner's Brief, p. 5 ("Respondent takes no position on whether this court re-sentences Petitioner or whether the matter is

29

transferred to the original sentencing court."). In light of this Opinion, the respondent may wish to waive personal-jurisdiction or territorial-jurisdiction objections by way of a motion to transfer the petition to the district of conviction and sentencing. As previously discussed, the record of the petitioner's trial is in the District of Arizona, and that court has superior familiarity with the conviction and sentence. Moreover, a determination as to whether the petitioner is actually innocent of money laundering requires an examination of the evidence adduced at trial, which in petitioner's case was approximately 17 weeks long. The trial court is therefore in the best position to make such a determination.

In the alternative, the respondent will be required to file a supplemental responsive brief, addressing the petitioner's claim of actual innocence as it pertains to Counts 53 and 54 (money laundering), and Count 38 (conspiracy to commit money laundering). The petitioner will then be allowed to file a supplemental rebuttal brief.

Accordingly,

IT IS HEREBY ORDERED that the respondent shall have twenty (20) days from the date of entry of this Order to notify the Court how it wishes to proceed in this matter.

SO ORDERED, this the 3rd day of May, 2013.


/s/ David Bramlette
UNITED STATES DISTRICT JUDGE

30